Filed 3/13/23  P. v. Ibarra-Pineda CA5
(unmodified opinion attached)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE JUAN IBARRA-PINEDA,<br><br>    Defendant and Appellant. | F082413<br><br>(Super. Ct. No. 18CR-03306)<br><br>**MODIFICATION OF OPINION AND DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on February 22, 2022, in the above entitled matter, be modified as follows:

1.  On page 11, insert the following new paragraph after the quote ending with "[IBARRA-PINEDA]:  I just want to remind you of my rights, and I do not authorize this."

On January 22, 2020, during a trial readiness conference, the trial court addressed defense counsel's motion to continue the trial to a later date.  During this hearing, the following relevant exchange occurred.

"THE COURT:  [Ibarra-Pineda] is using the interpreter, if she could state her appearance.

"[IBARRA-PINEDA]:  I don't authorize her, and she is not my lawyer.

[¶] … [¶]

"[DEFENSE COUNSEL]: I would like another trial setting. Your Honor, but I believe that it would take at least 60 days to do the investigation and necessary research to be prepared, so I'm asking for a minimum of 60 days.

"[PROSECUTOR]: Because of the time issue, I don't know if we need to set a trial.

"THE COURT: Yes, I would find good cause to continue the trial because I know Mr. [Ibarra-Pineda] is objecting to [defense counsel] representing him and objecting to the whole proceedings, so I think we should probably set a date.

[*Discussion regarding future dates.*]

"[PROSECUTOR]: For the questionnaires, could we do the Thursday before on the 9th?

"THE COURT: Let me just double-check. I think that's probably free.

"[IBARRA-PINEDA]: I don't authorize any of this. I'm opposed to all of it.

"THE COURT: I understand that, Mr. [Ibarra-Pineda].

[*Discussion continues.*]

"[IBARRA-PINEDA]: May I interrupt, please?

"THE COURT: Not at this point, Mr. [Ibarra-Pineda]. I understand you're objecting to all of this, you've made that clear, but [defense counsel] is your attorney, and she's your spokesperson when you're in court, and if we're in trial and you keep speaking out, you could be removed from the courtroom where you're not going to be able to see the witnesses and just [defense counsel] would be there, so I'm just warning you ahead of time you need to cooperate with the court process and act appropriately in the courtroom, and I am finding good cause for all of those dates to allow [defense counsel] to prepare and get ready for trial.

"[DEFENSE COUNSEL]: Your Honor, just to make it clear, my client again has refused to speak to me today.

"THE COURT: I understand that.

2.

"Mr. [Ibarra-Pineda], again, it would be to your advantage to cooperate with [defense counsel]. She has to prepare your defense. You're facing the possible life sentence, I believe, in this case, so anything in your defense you would need to tell her about so she can prepare. I'm not going to allow you represent yourself because you were not effective in doing that when I did allow it the last time.

"[IBARRA-PINEDA]: I don't need and I don't accept it.

"THE COURT: Okay. We'll note you have that on the record. We're done with his case now, then."

This modification does not effect a change in the judgment.

The petition for rehearing is denied.

SMITH, J.

WE CONCUR:


FRANSON, ACTING P. J.


PEÑA, J.

3.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE JUAN IBARRA-PINEDA,<br><br>    Defendant and Appellant. | F082413<br><br>(Super. Ct. No. 18CR-03306)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Carol K. Ash, Judge.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# **INTRODUCTION**

A jury convicted defendant Jose Juan Ibarra-Pineda of seven counts of lewd and lascivious acts upon a child under the age of 14 years old (Pen. Code, § 288, subd. (a), counts 1-7)[1] and as to each count found true the special allegation Ibarra-Pineda had violated section 288, subdivision (a) with multiple victims (§ 667.61, subds. (b), (e)). As to counts 1 through 7, the trial court sentenced Ibarra-Pineda to seven consecutive sentences of 15 years to life, for a total aggregate term of 105 years to life. Prior to the jury trial, Ibarra-Pineda indicated he wanted to represent himself, but refused to fill out a *Faretta*[2] form, did not answer the trial court's questions, and argued the trial court lacked jurisdiction over his case. The trial court subsequently denied the *Faretta* motion.

On appeal, Ibarra-Pineda contends the trial court: (1) violated his Sixth Amendment right to represent himself at trial; (2) abused its discretion when it imposed consecutive sentences on all seven counts of conviction; and (3) incorrectly calculated his total custody credits. As to this final argument, the People concede error.

We conclude the trial court properly denied Ibarra-Pineda's request to represent himself because his refusal to answer the court's questions made it impossible for the court to find he had voluntarily and knowingly waived his right to counsel, and it unnecessarily disrupted the proceedings. Further, we conclude the trial court did not abuse its discretion when it imposed seven consecutive sentences of 15 years to life because it considered both aggravating and mitigating circumstances before making its determination. Lastly, we accept the People's concession, and remand for the trial court to award defendant 1,107 presentencing custody credits, consisting of 963 days of actual time served plus 144 days of conduct credit. In all other respects, we affirm the judgment.

---

[1]    All further references are to the Penal Code, unless otherwise stated.

[2]    *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

## STATEMENT OF THE CASE

On October 10, 2018, the Merced County District Attorney filed an information charging Ibarra-Pineda with seven counts of committing a lewd act upon a child (§ 288, subd. (a), counts 1-7). Each count contained a special allegation Ibarra-Pineda had violated section 288, subdivision (a), with multiple victims (§ 667.61, subds. (b), (e)).

As to all counts, Ibarra-Pineda pleaded not guilty and denied all allegations. On July 29, 2019, Ibarra-Pineda made a *Faretta* motion to represent himself. Subsequently, on August 12, 2019, the trial court denied Ibarra-Pineda's motion.

On December 11, 2020, the jury found Ibarra-Pineda guilty as charged. On February 19, 2021, the trial court then sentenced him to 15 years to life on all seven counts to run consecutive to count 1 for a total aggregate sentence of 105 years to life. On that same day, Ibarra-Pineda filed a timely appeal.

## DISCUSSION[3]

### I. The Trial Court Correctly Denied Ibarra-Pineda's *Faretta* Motion

Ibarra-Pineda contends the trial court violated his Sixth Amendment right to self-representation by denying his *Faretta* motion, and specifically requests this court reverse and remand this matter for a new trial. We disagree.

#### A. Additional Factual Background

On July 29, 2019, Ibarra-Pineda indicated to the trial court he wanted to relieve his attorney of record and represent himself. The trial court informed Ibarra-Pineda he needed to complete a *Faretta* waiver form. Specifically, the trial court stated:

> "If you want to represent yourself there is a form you'll need to fill out. It is in English so you will have to have the [i]nterpreter to go over the form. It's just to make sure you understand all the consequences of representing

---

[3] The underlying facts of the case are irrelevant to our resolution of the issues presented on appeal. We therefore will not summarize the facts in this opinion.

yourself. It's usually not advised to represent yourself, but you certainly have that right.

"So we are going to have you go over this form first because I would not let you represent yourself if I did not think you were capable of doing so. Have a seat and we'll have you go over the form and then I will recall the matter."

The trial court provided Ibarra-Pineda two weeks to review the *Faretta* waiver form and set the matter over until August 12, 2019.

On August 12, 2019, the trial court held a hearing on Ibarra-Pineda's *Faretta* motion. The relevant exchange between the trial court and Ibarra-Pineda was as follows:

"THE COURT: Mr. [Ibarra-Pineda], did you fill out or go over the *Faretta* waiver form?

"[IBARRA-PINEDA]: I did look it through.

"THE COURT: Okay. Are you still wanting to represent yourself?

"[IBARRA-PINEDA]: I sure do.

"THE COURT: Okay. And did you understand what would be required of you if you represent yourself? It was all listed on the form.

"[IBARRA-PINEDA]: Well, since it's not something that is – that I have to turn in as an obligation then I decided not to turn it in.

"THE COURT: I won't make you initial it, but I do need to go over everything with you on the record. So you do understand you do have the right to an attorney, if you can't afford one I'll appoint one for you; you understand that?

"[IBARRA-PINEDA]: I would just like to clarify something for you. I have the jurisdiction so, therefore, I think that it's – I'm in my complete right not to be questioned.

"THE COURT: Well, that's not correct. I do have jurisdiction. This is a criminal complaint that was filed in Merced County alleging the crime was committed in Merced County. I did see you filed a motion based on jurisdiction.

"[¶] … [¶]

4.

"THE COURT:  So, Mr. [Ibarra-Pineda], if you want to represent yourself, you're going to have to be able to answer questions from the Court.  Are you saying you're not willing to do that or you don't understand that?

"[IBARRA-PINEDA]:  No.  My right is to remain silent and I would like to do that.

"THE COURT:  Okay.  If you want to remain silent then I will appoint an attorney for you to represent you because you cannot effectively represent yourself at this point.  So I will refer it to the Public Defender's office."

The trial court then denied Ibarra-Pineda's *Faretta* motion.

On August 21, 2019, defense counsel expressed a doubt as to Ibarra-Pineda's competency and requested a doctor be appointed to evaluate him.  The trial court suspended criminal proceedings pursuant to section 1368 and referred the matter to a doctor for a report and recommendation.  Ibarra-Pineda responded, "I don't need a doctor, and I'm resigning to the services of the public defender.  I don't need her."

On September 23, 2019, defense counsel informed the trial court Ibarra-Pineda "won't speak to me, and he states he has filed papers with the Court relieving me.  He doesn't want me to represent him, and he will not speak to me."  Based on defense counsel's representations, the trial court held a *Marsden*[4] hearing.  The relevant exchange during the *Marsden* hearing is as follows:

"THE COURT:  Okay.  So, Mr. [Ibarra-Pineda], your attorney has said that you refuse to talk to her, and you're wanting to be represented by a different attorney.

"[IBARRA-PINEDA]:  No.

"THE COURT:  If you want that, you would have to tell me why.

"[DEFENSE COUNSEL]:  I believe he wants to represent himself, Your Honor.

---

**4**     *People v. Marsden* (1970) 2 Cal.3d 118.

5.

"[IBARRA-PINEDA]: Okay. Before anything else, good morning. I – I want to go pro per. I do not need any representative. The documentation that has been arriving, paperwork, it explains comprehensively the whole situation.

"The – the other more important issue to be able to continue to pursue what you intend to pursue, I'm requesting kindly the proof be presented at this 'administrative agency,' quote, and – at the administrative agency because this is – this is jurisdictional. I do not belong to this jurisdiction.

"With all due respect, I am trying to say kindly I sent a document to the representative that was appointed to me to relieve this person without even having hired this person, but this person refuses to abide by my petition or request.

"I am a man of sound mind; clear mind as well. If you have some records of me in the area that states that I was not a person of a – of – of a dirty mind or of a mental issue.

"I had in the previous area a license as a handyman; a license as a truck driver, semis; I was a construction foreman for many years, which does not credit at all that I am an insane person as is trying to be purported here.

"THE COURT: Okay. Let me just stop you right there, Mr. [Ibarra-Pineda]. I came back here because your attorney had represented that you had represented that you no longer want her to represent you. I understand the issues that you're raising, but at this point, um, when previously I granted your request to represent yourself, I formed the opinion I didn't think you could do so competently without counsel, so that's why I appointed counsel for you.

"The only issue before the Court right now is whether or not you are competent to understand the proceedings, so that's why we appointed the doctor. It will be up for him to come to talk with you, he'll give us an opinion, and then we can decide how to go forward.

"If you want to contest it if it was unfavorable, you can contest it, but at this point I'm not going to grant your request to represent yourself or to relieve [defense counsel], and I realize you don't agree with that decision, but at this point I don't have the belief that you would be able to competently and effectively represent yourself without counsel, that you need counsel, so I'm going to leave [defense counsel] as your attorney.

6.

"We can go back out and set the future date, and I think I'll have to contact [the doctor] for him to make another effort to talk to Mr. [Ibarra-Pineda]."

The trial court denied both Ibarra-Pineda's request that his counsel be relieved and the *Marsden* motion.

Following the *Marsden* hearing, the trial court, due to a discrepancy in the records of Ibarra-Pineda's last name, asked Ibarra-Pineda his true name. The relevant exchange was as follows:

"[IBARRA-PINEDA]: Once again, good morning. My name you've already had for sometime now. My previous attorney confirmed this, and you took note of it correctly at the time.

"THE COURT: So your correct name is – I'm trying to think because we don't have the Minute Order – Jose Juan Ibarra-Pineda?

"[IBARRA-PINEDA]: It's the same one on – as is what is stated on the caption.

"THE COURT: Because the jail has it Ibarra, and the one that's stated on the Complaint does not have the Ibarra.

"Now, if you've sent letters to the Court, I don't see those letters because that would be improper communication, so I don't know what caption you're referring to.

"[IBARRA-PINEDA]: Well, once again, I will represent myself. You have all of that information already.

"THE COURT: Okay. I don't have anything showing Ibarra, but we'll note on the Minute Order, then, that he may also go by Ibarra-Pineda, and we'll refer it to [the doctor] for him to contact [Ibarra-Pineda], and just let him know that it should be under maybe Ibarra-Pineda. I would still think they would be able to locate him there."

On October 22, 2019, the trial court noted it had received a report from the doctor, but "indicate[d] [Ibarra-Pineda] refused to speak with [the doctor], and so the doctor is requesting a re-referral, so I don't know how counsel wanted to proceed." The following relevant exchange occurred between the trial court, defense counsel, and Ibarra-Pineda:

7.

"THE COURT: Yes, no, I remember, and Mr. [Ibarra-Pineda] would not respond to the Court, and I just felt he was not able to represent himself, and so that's why I referred it under [section] 1368.

"[DEFENSE COUNSEL]: I understand –

"THE COURT: So at this point –

"[DEFENSE COUNSEL]: I understand the Court's position. Just so that I'm clear, what I thought might be beneficial is if [the doctor] was able to speak to [Ibarra-Pineda], that he would be able to determine not only his mental competency as far as [section] 1368, but he might be able to help [Ibarra-Pineda] understand what the Court is looking for as far as his competency to represent himself in court, because at this point, [Ibarra-Pineda] has continued to assert that he doesn't want the services of the public defender, and he wants to represent himself.

"I don't know if it's required that he answer the specific *Faretta* questionnaire in order to represent himself, but –

"THE COURT: No, it wasn't that. It was just even in court when I'd ask him things about the case – because I think he did represent himself for a short while – and he would not answer me, and he said he wanted to assert his Fifth Amendment right, and so then at that point, how's he going to represent himself?

"[DEFENSE COUNSEL]: I understand, Your Honor. I think at this point he does want to make a statement. I don't know what that statement is because he won't speak to me, so I would caution him as to what that statement is, but he does have some right to speak.

"THE COURT: Yes, no, if he wants to make a statement, he can do that.

"[IBARRA-PINEDA]: Good morning, Your Honor. I just want to remind you as the Court and the DA's office of the evidence and what's in the official record from the administrative agency so that it could be analyzed. Please, if that can be done, because you have jurisdiction over the subject and the material and that has been stated. That's all. Thank you.

"THE COURT: Okay. And I've already ruled on these particular statements before.

8.

"So, Mr. [Ibarra-Pineda], I understand you have these – this point of view and that you probably – I'm assuming you're wanting to represent yourself at some point, but unless I get something from a doctor saying you're able to, I won't grant that, so you really need to talk to [the doctor] if you want to move your case forward, and I know you probably are not going to listen to anything that I'm saying, but that's my concern.

"You can represent yourself, but I have to make sure you're able to do so effectively, and when the Court is – if you did represent yourself, when the Court was speaking with you, that you can respond, or if you're in front of a jury, you can present your defense. That's all I'm looking for.

"So I'm going to give [the doctor] one more chance to come out and speak with you, and I would strongly encourage you to speak with him, but it is your choice, but I just want to make it clear to you, so I'm not relieving the public defender at this point."

"[¶] … [¶]

"[IBARRA-PINEDA]: I don't need the doctor.

"THE COURT: Okay, but I need the doctor. I need the doctor to talk with you; otherwise, I'm not confident – I don't believe you can represent yourself. He has talked to people before, and after he talked to them, they were allowed to represent themselves.

"[IBARRA-PINEDA]: I've reserved all of my rights under UCC 1308 without prejudice.

"THE COURT: Okay. We have that on the record.

"And I'll refer it one more time to [the doctor]."

Subsequently, in the section 1368 report, the doctor stated defendant "refused to come to the interview room for this evaluation" and "reiterated his refusal to participate." The "[r]esults of [Ibarra-Pineda's] evaluation suggested the absence of a psychological, neurological, developmental, or substance abuse disorder" and that his "appearance during this brief face-to-face interview were all suggestive of the absence of a DSM-5 diagnosis contributing to his decision to represent himself in court or refuse to participate in this evaluation." On December 18, 2019, both parties submitted on the section 1368 report and the trial court concluded defendant was competent to stand trial and reinstated

9.

criminal proceedings. As it related to Ibarra-Pineda's representation, the following relevant exchange occurred:

"[DEFENSE COUNSEL]: So, Your Honor, just continuing –

"[IBARRA-PINEDA]: I don't consent to that.

"[DEFENSE COUNSEL]: - my client is not agreeing to my representation. I understand the Court's position, and I'm willing to proceed as much as he will allow me to. It's very difficult; in that, he will not speak to me to prepare a defense in this case.

"THE COURT: Yes, but he's really not able to represent himself either. Just based upon the fact that he wouldn't respond to the Court, I don't think how he could be effective counsel for himself, so I don't know how else to proceed at this point.

"[PROSECUTOR]: Your Honor, my understanding is that at this point – I mean, the defendant can't represent himself. He's not cooperating with the court process, but he's also not allowed to stonewall it and completely halt the proceedings of his own volition.

"He's been found competent. The Court's appointed the public defender's office. [Defense counsel] has been assigned. That, at this point, I think the Court should, you know, proceed without [Ibarra-Pineda ]. If he doesn't want to cooperate in his own defense, he's willfully harming his own case, and that it's not something that – if everybody started doing this, then we would never get any cases anywhere.

"He can't completely block the proceedings from going on if he's voluntarily, knowingly and intelligently creating these problems himself.

"THE COURT: No, I don't disagree. I agree that we need to move the case forward.

[¶] … [¶]

"[IBARRA-PINEDA]: Your honor, may I speak?

"THE COURT: No. You're represented by an attorney.

"[IBARRA-PINEDA]: I do not authorize this. Also, on the DA, if she can go ahead and present any documentation that proves that I am the person – the person who is guilty.

10.

"THE COURT: Mr. [Ibarra-Pineda], at this point you've already raised those issues before. I've already ruled on them, so we'll go ahead and set a trial date.

"[*Discussion regarding trial dates.*]

"[IBARRA-PINEDA]: I do not authorize to that. You don't have my consent for that.

"[*Discussion continues.*]

"[IBARRA-PINEDA]: I just want to remind you of my rights, and I do not authorize this."

On April 23, 2020, pursuant a statewide emergency order, the trial court continued the jury trial. During this hearing, the following relevant exchange occurred:

"[IBARRA-PINEDA]: I don't authorize any of the proceedings. You do not have jurisdiction. The jurisdiction is mine. That is what I told you the last time.

"THE COURT: All right. Thank you, Mr. [Ibarra-Pineda].

"[¶] … [¶]

"[IBARRA-PINEDA]: So, Your Honor, I just – Your Honor, I just wanted to remind you that I have – I have reserved my rights according to UCC 1308.

"[¶] … [¶]

"[IBARRA-PINEDA]: May I speak?

"THE COURT: [Defense Counsel], do you want your client to speak?

"[IBARRA-PINEDA]: I don't have a representative. I have no one representing me. She's already been sent a note to fire her, and she has not responded and nothing's been done.

"THE COURT: Okay. All right.

"[DEFENSE COUNSEL]: And, Your Honor, can I just briefly make the record clear that Mr. [Ibarra-Pineda] has never requested counsel. He

11.

wanted to represent himself.  I believe there was a refusal to answer the *Faretta* questions.

"He has –

"THE COURT:  [Defense Counsel], you have to slow down. Because everything you're stating needs to be interpreted.

"[DEFENSE COUNSEL]:  I'm sorry.  I apologize.  I forgot that.  All right.  Go ahead.

"[¶] … [¶]

"[IBARRA-PINEDA]:  Your Honor, I would like to please ask the District Attorney's office to present proof of jurisdiction.…  Because without jurisdiction, there is nothing.

"And, also, please, this lady lawyer has already been sent a letter of termination, and she hasn't agreed.  And that is a conspiracy against me.

"THE COURT:  Okay.  Your objections are noted, Mr. [Ibarra-Pineda]."

On May 26, 2020, the jury trial was continued due to the COVID-19 pandemic. The following relevant exchange occurred:

"[IBARRA-PINEDA]:  That the DA present, tell the judge jury trial evidence.  That's what I want.

"THE COURT:  Okay.  But just so we can do something today – it's not your trial today, will you appear by video?

"[¶] … [¶]

"[IBARRA-PINEDA]:  To tell the DA to present evidence of jurisdiction.  Say that it the judge."

On July 7, 2020, the jury trial was again continued due to the COVID-19 pandemic.  The following relevant exchange occurred:

"[IBARRA-PINEDA]:  I want to say something.

"THE COURT:  What was it regarding?

"[IBARRA-PINEDA]: Good morning. I don't have a lawyer to represent me. I don't have any lawyer. And you can't proceed with any – anything to do with the trial because you do not have jurisdiction."

"THE COURT: Okay. I have noted that objection before and I've overruled it. So we'll note it for the record."

On November 19, 2020, the jury trial proceeded with defense counsel representing Ibarra-Pineda.

## B.      Applicable Law

In *Faretta*, the United States Supreme Court considered "whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." (*Faretta*, *supra*, 422 U.S. at p. 807.) The high court concluded, "The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant – not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." (*Id*. at p. 820.) "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." (*Id*. at p. 821.)

The high court acknowledged "that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." (*Faretta*, *supra*, 422 U.S. at p. 834.) But "[t]he defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' " (*Ibid*.)

13.

"The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*People v. Marshall* (1997) 15 Cal.4th 1, 23 (*Marshall*); see *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002 ["Equivocation of the right of self-representation may occur where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-representation, or where such actions are the product of whim or frustration."].)

"A knowing and intelligent waiver of the right to counsel is required before a criminal defendant is allowed to represent himself." (*People v. Miranda* (2015) 236 Cal.App.4th 978, 984 (*Miranda*).) A defendant seeking to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta*, *supra*, 422 U.S. at p. 835.) "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation," rather, "the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070.) Erroneous denial of a *Faretta* motion is reversible per se (*People v. Carlisle* (2001) 86 Cal.App.4th 1382, 1390), and we review de novo, and after a review of the entire record, the question of whether the defendant's invocation of the right to self-representation and waiver of the right to counsel was knowing and voluntary. (*Marshall*, *supra*, 15 Cal.4th at pp. 23-24.) However, in certain circumstances, the denial of a *Faretta* motion is within the discretion

of the trial court and reviewed for abuse of discretion, as when a defendant is so disruptive, disrespectful, or obstructionist in his actions as to preclude the exercise of self-representation. (*People v. Welch* (1999) 20 Cal.4th 701, 735 (*Welch*).)

### C. Analysis

Ibarra-Pineda contends: (1) he made a timely, unequivocal, and persistent demand to represent himself at trial; (2) he was competent to make that choice; and (3) the trial court wrongfully denied his constitutional right to self-representation requiring reversal. Although Ibarra-Pineda made an initial, timely demand to represent himself at trial, we conclude the trial court properly denied his request because there is no indication Ibarra-Pineda understood the consequences of self-representation, his actions and words demonstrated his unwillingness to cooperate in the trial process, and he never made an unequivocal request to represent himself after his competency determination.

The trial court properly denied Ibarra-Pineda's requests for self-representation. First, there is nothing in the record to indicate Ibarra-Pineda voluntarily waived his right to counsel and understood the significance and consequences of his decision to represent himself. (*Miranda*, *supra*, 236 Cal.App.4th at p. 984.) The trial court attempted to make Ibarra-Pineda aware of the dangers and disadvantages of self-representation and determine whether he understood the consequences of his request by providing him with the *Faretta* form. At the subsequent *Faretta* hearing, the trial court asked Ibarra-Pineda if he had completed the form and Ibarra-Pineda stated, "I have the jurisdiction so, therefore, I think that it's – I'm in my complete right not to be questioned." The trial court responded, "[I]f you want to represent yourself, you're going to have to be able to answer questions from the Court" and defendant replied, "No. My right is to remain silent and I would like to do that." The trial court subsequently denied the *Faretta* motion. Ibarra-Pineda's refusal to answer the trial court's questions made it impossible for the court to determine whether he fully understood the consequences of representing himself.

15.

Further, after the section 1368 report, wherein the doctor indicated Ibarra-Pineda was competent to stand trial, defense counsel indicated that Ibarra-Pineda wanted to represent himself. However, Ibarra-Pineda never spoke up to make this request on the record. Additionally, during the subsequent proceedings leading up to his trial date, Ibarra-Pineda did not invoke his right to represent himself, but rather continued to reiterate his misplaced belief the trial court lacked jurisdiction over his case. Although Ibarra-Pineda made that initial *Faretta* request, he never reiterated his desire to represent himself after it was determined he was competent to stand trial. (See *People v. Kenner* (1990) 223 Cal.App.3d 56, 62 ["Defendants who sincerely seek to represent themselves have a responsibility to speak up. [W]e believe it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion."].) Accordingly, the trial court properly appointed counsel for Ibarra-Pineda because he never made an unequivocal request to represent himself after it was determined he was competent to stand trial and thus, it was impossible for the court to determine whether his initial waiver was voluntary, knowing, and intelligent. (See *Indiana v. Edwards* (2008) 554 U.S. 164, 171-172.)

Ibarra-Pineda relies heavily on *People v. Best* (2020) 49 Cal.App.5th 747 (*Best*) in support of his contention; however, *Best* is distinguishable. The First District, Division 4, concluded the trial court erred in denying the defendant the right to represent herself because the "[d]efendant had been found competent to stand trial, and … [t]here is no indication she suffered from severe mental illness to the point she was not competent to conduct trial proceedings on her own." (*Id*. at p. 760.) "Her invocation of the right to self-representation was unambiguous, and the record indicates it was knowing and voluntary. She filled out the *Faretta* waiver form and, at the hearing on the *Faretta* motion, said she understood the rights she was giving up and the risk and disadvantages of representing herself." (*Ibid*.) Unlike in *Best*, Ibarra-Pineda refused to both fill out the *Faretta* form and answer the trial court's questions regarding self-representation.

16.

Therefore, there was no indication Ibarra-Pineda "understood the rights [he] was giving up and the risks and disadvantages of representing [himself]." (*Ibid*.) By refusing to answer the trial court's questions, Ibarra-Pineda placed the court between a proverbial rock and a hard place. Ibarra-Pineda argues the trial court committed reversible error by denying his request to represent himself; however, it would have been error for the court to grant Ibarra-Pineda's request to represent himself without a voluntary waiver of his right to counsel. (*Marshall*, *supra*, 15 Cal.4th at p. 20 [holding that because the right to counsel is self-executing and persists unless the defendant waives the right, the court must indulge every reasonable inference against such a waiver]; see also *People v. Bush* (2017) 7 Cal.App.5th 457, 475 [an inadequate *Faretta* admonishment is reviewed under the "*Chapman*[5] harmless error standard") The trial court properly denied Ibarra-Pineda's motion for self-representation because he did not voluntarily waive his right to counsel and failed to cooperate with the court's questioning regarding his ability to represent himself.

Additionally, Ibarra-Pineda's unwillingness to answer the trial court's questions unnecessarily disrupted and delayed the proceedings. As our Supreme Court has stated, " 'The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.' " (*Welch*, *supra*, 20 Cal.4th at p. 734 [further noting, " 'an accused has a Sixth Amendment right to conduct his own defense, provided only that … he is able and willing to abide by rules of procedure and courtroom protocol' " (italics omitted)].) "This rule is obviously critical to the viable functioning of the courtroom. A constantly disruptive defendant who represents himself, and who therefore cannot be removed from the trial proceedings as a sanction against disruption, would have the capacity to bring his trial to a standstill." (*Ibid*.) *Faretta* "did not establish a game in which [a] defendant can

---

**5**    *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

engage in a series of machinations, with one misstep by the court resulting in reversal of an otherwise fair trial." (*People v. Clark* (1992) 3 Cal.4th 41, 115 (*Clark*), abrogated on other grounds in *People v. Edwards* (2013) 57 Cal.4th 658, 704-705.)

"[A] trial court must undertake the task of deciding whether a defendant is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation. The trial court possesses much discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion 'will not be disturbed in the absence of a strong showing of clear abuse.' " (*Welch*, *supra*, 20 Cal.4th at p. 735.) A record on appeal is often "cold," and it is "the trial court … that … is in the best position to judge [a] defendant's demeanor." (*Ibid*.)

For example, in *Welch*, the Supreme Court upheld the denial of self-representation where the defendant "interrupted the trial court several times to argue what the court had declared to be a nonmeritorious point; he accused the court of misleading him; he refused to allow the court to speak and he refused several times to follow the court's admonishment of silence." (*Welch*, *supra*, 20 Cal.4th at p. 735.) This conduct, "amount[ed] to a reasonable basis for the trial court's conclusion that [the] defendant could not or would not conform his conduct to the rules of procedure and courtroom protocol, and that his self-representation would be unacceptably disruptive." (*Ibid*.)

Additionally, in *Clark*, the court reached the same conclusion where the defendant "apparently became disgruntled with the court's ruling. In front of the jury, he suddenly stated an intent to stand mute. This statement was clearly not motivated by the sincere desire to withhold a defense; it was instead an attempt to either inject error into the case, or to pressure the court into reconsidering its earlier rulings, or, most likely, both. It was merely one of a series of attempts to manipulate or coerce the trial court," such as engaging in "rambling discourse" and " 'frivolous' " motions. (*Clark*, *supra*, 3 Cal.4th at

18.

pp. 113-115.) The defendant's conduct was "sufficiently disruptive to warrant termination of his self-representation." (*Id*. at p. 115.)

Here, although Ibarra-Pineda's conduct did not rise to the level of disruptiveness displayed in both *Welch* and *Clark*, his uncooperative behavior made it unduly burdensome for the court to move the case forward. Ibarra-Pineda refused to cooperate with both the trial court and the doctor who performed his section 1368 evaluation. Ibarra-Pineda routinely reargued and rehashed "nonmeritorious point[s,]" (*Welch*, *supra*, 20 Cal.4th at p. 735) concerning fanciful jurisdictional defects and irrelevant legal principles. He repeatedly would not give straight answers to the trial court's questions, forcing the trial court to go in circles with Ibarra-Pineda to obtain the most basic information. For example, when the trial court attempted to clarify Ibarra-Pineda's legal name, he refused to provide this basic information and told the trial court, "You have all of that information already." Therefore, it was reasonable for the trial court to conclude "defendant could not or would not conform his conduct to the rules of procedure and courtroom protocol, and that his self-representation would be unacceptably disruptive" and the court's decision to appoint counsel for defendant ensured the "viable functioning of the courtroom." (*Welch*, at p. 734.)

Nonetheless, Ibarra-Pineda contends the trial court erred when it denied his *Faretta* motion based on his inability to represent himself, and not his disruptiveness to the trial proceedings, which may have been a proper basis for the denial. However, as our Supreme Court stated, "Even [assuming] the trial court denied the request for an improper reason, if the record as a whole establishes defendant's request was nonetheless properly denied on other grounds, we would uphold the trial court's ruling." (*People v. Dent* (2003) 30 Cal.4th 213, 218; cf., *Best*, *supra*, 49 Cal.App.5th at p. 763 ["Because the trial court did not deny [the] defendant's *Faretta* motion on grounds of disruptiveness, we cannot here uphold the trial court's ruling on this alternate ground."].) As noted above, the trial court properly denied Ibarra-Pineda's *Faretta* motion because the record is clear

19.

Ibarra-Pineda did not cooperate with the *Faretta* procedures and refused to answer the court's questions regarding his self-representation, thereby making it impossible for the court determine whether Ibarra-Pineda fully understood the consequences of a possible waiver of counsel.

**II.    The Trial Court Did Not Abuse its Discretion in Imposing Consecutive Sentences on All Seven Counts Because It Properly Weighed All Relevant Factors**

Ibarra-Pineda further contends the trial court abused its discretion by imposing seven, rather than three, consecutive life terms because the court failed to properly consider his lack of a criminal record as a mitigating factor.  We again disagree.

**A.    Additional Factual Background**

As to each of the seven counts, the trial court sentenced Ibarra-Pineda to seven consecutive terms of 15 years to life, for a total aggregate term of 105 years to life.  Prior to sentencing, the following relevant exchange between the trial court, defense counsel, and the prosecutor occurred:

> "THE COURT:  … And then I just wanted to – um, my tentative ruling would be, obviously, he's not eligible for probation and that's pursuant to Penal Code [s]ection 667.61[, subdivision](h).  And also, I believe that each sentence would need to run fully consecutive because it does involve separate victims or single victims on separate occasions.  And that's per Penal Code [s]ection 667.61[, subdivision](h) as well.

> "So, by my calculations, the mandatory sentence by law would be 105 years to life if I ran each 15 to life consecutive, but I'll certainly listen to arguments from counsel.

> "[¶] … [¶]

> "[DEFENSE COUNSEL]:  Your honor, I just would like the Court to take into consideration the lack of criminal record, that my client has not so much as had any traffic violations.  Um, if you looked in the police – in the report of the Probation Department, he has no history via CLETS or FBI record; not any record whatsoever.  I would like the Court to take that into consideration when applying the sentence.

"And I would be asking that the Court sentence the 15 to life for each – each complaining witness. And I would be asking for instead 45 years to life.

"[¶] … [¶]

"[PROSECUTOR]: I think that the Court – so the Court can exercise its discretion in determining whether to run them consecutively or concurrently. Um, I – I do feel that the Court should run them consecutively. I think that with having three separate victims on multiple occasions, spanning multiple generations would warrant the Court to run them consecutively. I also do think that he took advantage of a vulnerable victim that was entrusted for child care to his wife; that he took advantage of a position of trust. And I do think that that would be appropriate.

"I just wanted the record to be clear, though, in the Court sentencing him.

"THE COURT: Thank you.

"And I was going to go over the circumstances in aggravation and mitigation even though he's not eligible for probation. I still think we should make a record of that.

"So as far as circumstances in aggravation: I would agree Rule 421, subdivision (3) would apply. The victim was particularly vulnerable. They were young girls.

"I would find eight applies. The manner in which the crime is carried out indicates planning, sophistication, or professional. He took advantage of them when they were at his wife's home for child care. And had them go upstairs and get a blanket, or different things occurred that looks like he was planning to do. I remember there was one thing during a ride to a birthday party that something occurred. So I think that does show planning. And he did take advantage of a position of trust or confidence given his relationship to the victims, and the fact they were placed in his home for their child care.

"There is no circumstances in aggravation regarding the [Ibarra-Pineda]. I would agree he has no prior record. And, so, in mitigation, I would find Rule 423 [subdivision] (b)(1) does apply, that he has no prior record.

"And then regarding concurrent or consecutive sentences, I would have to agree. I would still run it consecutive even knowing that I do have

21.

the discretion. And I thought about this when I was initially reviewing the trial, and some of the testimony at trial. Um, Counts 1, 2, and 3 all pertain to Confidential Victim Number 1, who was the young victim who testified. She testified that he touched her, um, several times in her chest – chest, middle area, and butt area under her clothes more than one time since first grade.

"And then she recalled a specific last time was in third grade. Um, so I think those are three separate occasions. And the fact there was more than one victim spanning over a length of years, this was occurring that [Ibarra-Pineda] was preying on these children, I think that would justify consecutive sentencing.

"And then as far as Counts 3 and 4, those pertain as to [E.T.].

"[PROSECUTOR]: I'm sorry for interrupting the Court. The Court just said 3 and 4. I believe it's 4 and 5.

"THE COURT: Oh, I'm sorry. I typed this. I have too many mistakes. Thank you. You're right, its 4 and 5.

"As to Counts 4 and 5, regarding [E.T.], she recounted two specific incidences: The time she went upstairs for a blanket and [Ibarra-Pineda] came up behind her and pushed against her, moving her up and down. And she felt his penis rubbing against her vagina.

"And then Count 5 was another time. After the first time, it's alleged in the Information at her brother's birthday party, he touched her leg, and then her vagina with his hand, and did some kissing that day as well. So those were clearly separate incidences. So I think that would justify consecutive sentences.

"And as to Count 6 and 7, those are as to [Y.I.]. She recounted the first time, um, lying on the blankets and he rubbed her vaginal area with lotion using his hands.

"Then Count 7 was in the other time. She testified that he kissed her mouth and her – his tongue was in her mouth. And then she did recall two or three other incidents, no details.

"So he basically was preying on these girls and it was over a period of time that this continued, that he felt he could take advantage of them this way. So I think his behavior is very reprehensible and heinous and does justify consecutive sentencing.

22.

"So even – so I am going to order that probation would be denied. And it's my understanding I would not have discretion to order it, but if I did have discretion, I would still not grant probation given the circumstances of this offense. And I am going to run each of the counts consecutive for the reasons that I just stated.

"So if we could try to have [Ibarra-Pineda] come out, I'll go over the actual sentencing with him."

## B.    Applicable Law

Ibarra-Pineda was convicted of seven counts of violating section 288, subdivision (a), which does not mandate consecutive sentences. (§ 667.61, subd. (i).) However, under section 669, a trial court has discretion to determine whether to impose sentences consecutively or concurrently. (*People v. Felix* (2000) 22 Cal.4th 651, 655 ["Whenever a person is convicted of two or more crimes, the court must impose either concurrent or consecutive sentences. (§ 669.)"].) The trial court considers the following factors in deciding whether to impose consecutive rather than concurrent sentences:

"(a) Facts relating to crimes[.] [¶] Facts relating to the crimes, including whether or not:

"(1) The crimes and their objectives were predominantly independent of each other;

"(2) The crimes involved separate acts of violence or threats of violence; or

"(3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.

"(b) Other facts and limitations[.] [¶] Any circumstances in aggravation or mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial, may be considered in deciding whether to impose consecutive rather than concurrent sentences, except:

"(1) A fact used to impose the upper term;

"(2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170[subdivision](h); and

23.

"(3) A fact that is an element of the crime." (Cal. Rules of Court, rule 4.425(a), (b).)[6]

Rule 4.421 states, "Circumstances in aggravation include factors relating to the crime and factors relating to the defendant." (Rule 4.421.) As it specifically relates to the underlying offense, factors in aggravation include when "[t]he victim was particularly vulnerable," (*id*. at (3)), "[t]he manner in which the crime was carried out indicate[d] planning, sophistication, or professionalism," (*id*. at (8)) and "defendant took advantage of a position of trust or confidence to commit the offense." (*Id*. at (11).)

Rule 4.423 states, "Circumstances in mitigation include factors relating to the crime and factors relating to the defendant." (Rule 4.423.) One mitigating factor includes when "[t]he defendant has no prior record, or has an insignificant record of criminal conduct, considering the recency and frequency of prior crimes." (*Id*. at (b)(1).)

"A trial court's sentencing decision is subject to review for abuse of discretion." (*People v. Hicks* (2017) 17 Cal.App.5th 496, 512.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

---

**6**     All further rule references are to the California Rules of Court.

24.

## C.    Analysis

Ibarra-Pineda concedes, "all three of the [rule 4.425] subdivision (a) factors point toward imposition of consecutive terms" and the trial court found three circumstances in aggravation under rule 4.421(a)(3), (8), and (11). Notwithstanding these aggravating factors, defendant contends, "an important mitigating factor applicable to this case was that the 'defendant has no prior record, or has an insignificant record of criminal conduct, considering the recency and frequency of prior crimes.' " Specifically, Ibarra-Pineda argues the trial court abused its discretion because it "gave little weight, if any, to the fact that this was [his] first criminal offense." We disagree. The trial court properly considered all relevant aggravating and mitigating factors before imposing consecutive sentences as to all seven counts.

As to the aggravating factors, the trial court stated under rule 4.421(a)(3), "[t]he victim was particularly vulnerable. They were young girls." Next, as to rule 4.421(a)(8), the trial court concluded "[t]he manner in which the crime [was] carried out indicat[ed] planning, sophistication, or professional[ism]" because defendant "took advantage of them when they were at his wife's home for child care," he "had them go upstairs and get a blanket, or different things occurred that looks like he was planning to do," along with another incident occurring "during a ride to a birthday party."

The trial court then found a single factor in mitigation under rule 4.423(b)(1). Specifically, the trial court stated, "There is no circumstances in aggravation regarding the defendant. I would agree he has no prior record. And, so, in mitigation, I would find Rule 423(b)(1) does apply, that he has no prior record." However, the trial court continued and proceeded to detail the following specific facts regarding each victim and count and concluded:

> "So [Ibarra-Pineda] basically was preying on these girls and it was over a period of time that this continued, that he felt he could take advantage of them this way. So I think his behavior is very reprehensible and heinous and does justify consecutive sentencing."

25.

The trial court did not "g[i]ve little weight, if any, to the fact that this was [Ibarra-Pineda's] first offense,"  but rather concluded the above mentioned aggravating factors far outweighed this one mitigating factor.  Accordingly, the trial court's imposition of consecutive sentences as to all seven counts was not an abuse of discretion and not so "irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

## III.    The Trial Court Incorrectly Calculated Ibarra-Pineda's Custody Credits

Lastly, Ibarra-Pineda contends the trial court incorrectly calculated his custody credits.  The People concede error.  We accept the People's concession and conclude Ibarra-Pineda should be awarded an additional 11 days for a total of 1,107 days.

Here, the probation report indicated Ibarra-Pineda had been in presentence custody from July 3, 2018 through the original sentencing date of February 16, 2021, which comprised 950 actual days.  On February 19, 2021, the trial court applied the probation report's figure and stated, "So I'll add three more because we continued it."  The trial court then concluded the total actual custody credit was 953 days; defense counsel agreed.  The trial court then asked for a calculation of 15 percent of 953 and the prosecutor stated it was 142.9.  The trial court responded, "So I'll round it to 143.  So we'll show 953, plus 143 conduct, for a total of 1,096 days credit towards your sentence."

This calculation was incorrect.  The period between July 3, 2018 and February 16, 2021 comprised 960 days, not 950 days.  Ibarra-Pineda was convicted of a violent felony and thus, his conduct credits were limited to 15 percent.  (§ 2933.1, subd. (c).)  Fifteen percent of 963 is 144.45.  Ibarra-Pineda was entitled to 144 days of conduct credits and thus, his total number of credits is 1,107 days presentencing custody credits (963 days actual time plus 144 days of conduct credit).  Therefore, the trial court incorrectly awarded only 1,096 presentencing custody credits, which was 11 too few.

## DISPOSITION

The trial court is ordered to prepare and file an amended abstract of judgment awarding Ibarra-Pineda 1,107 presentencing custody credits, consisting of 963 days actual time served plus 144 days of conduct credit, and is directed to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation and any other relevant authorities. In all other respects, the judgment is affirmed.

SMITH, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

27.